# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

LISA MARIE WOOD,

            Plaintiff,

v.                     1:16-CV-144 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

---

PETER M. MARGOLIS, ESQ., for Plaintiff[1]
REBECCA H. ESTELLE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y.G.O. # 18, in accordance with the provisions of 28 U.S.C. § 636 (c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 2, 4, 7).

## I. PROCEDURAL HISTORY

On January 16, 2013, plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning April 18, 2008.[2] (Transcript ("T") 123-24). Plaintiff's applications were initially denied on May 7, 2013. (T. 123-24). She made a timely request for a hearing before an

---

[1] Plaintiff filed this action pro se. (Dkt. No. 1). On July 6, 2016, in view of the fact that plaintiff failed to file a brief in support of her position, I ordered the defendant to file and serve defendant's brief by September 2, 2016. (Dkt. No. 14). After defendant filed her brief in support of Commissioner's position, plaintiff obtained counsel and filed her brief on October 21, 2016. (Dkt. Nos. 15, 16).

[2] This is plaintiff's third attempt at applying for disability benefits, claiming that her disability began in 2008. (T. 65-100). Plaintiff did not appeal either prior decision, and is precluded from seeking a disability determination fro the period prior to November 3, 2012. 20 C.F.R. §§ 404.955, 404.968.

Administrative Law Judge ("ALJ"). (T. 131-33). On June 11, 2014, plaintiff appeared for the hearing, before ALJ Paul Kelly. (T. 36-64). On July 7, 2014, the ALJ found that plaintiff was not disabled. (T. 17-27). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 6, 2015. (T. 1-13).

## II. <u>GENERALLY APPLICABLE LAW</u>

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment

2

> which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

At the hearing, plaintiff amended her onset date to November 3, 2012, the date of the last denial of benefits by the previous ALJ. (T. 37-38). At the time of the current ALJ hearing, plaintiff was forty-seven years old and had completed one semester of college. (T. 39). She lived with her husband and her three grown children. (T. 46). She was 5'8" tall and weighed approximately 280 pounds. (T. 49). Plaintiff testified that she last worked in April of 2008, when she was hurt on the job, and she was let go. (T. 39-40). Plaintiff testified that she was unable to work because she did not sleep, was in constant all-over pain,[3] and suffered from anxiety and depression so that she did not "deal well with being out with people right now." (T. 40).

Plaintiff testified that she was on medication for depression, anxiety, and pain, but that the medication does not really help the pain. (T. 41). Plaintiff attended

---

[3] Plaintiff estimated that, on a scale of 1-10, her pain was at a 6-7 every day. (T. 42).

4

counseling for her mental health. (T. 42). Plaintiff testified that the medication that she takes for her anxiety and depression is effective, but that her doctors keep switching medications "to try to find one that will work." (T. 43). Plaintiff testified that she could not work because she "just . . . can't deal – going out stresses [her] terribly," and her "anxiety level goes through the roof." (T. 43). Getting to the hearing was stressful. (*Id.*) Physically, plaintiff stated that "it hurts to move," and she did not sleep. (*Id.*) Plaintiff stated that she tried to exercise, and that she was slowly attempting to do yoga, but that she could only do it for five to ten minutes per day. (T. 42).

Plaintiff testified that she had a "sleep study" done, and that she was given a CPAP[4] machine, but she only used it for a short period of time. (T. 43-44). She stated that she woke up from the pain. (T. 44). She stated that she drove a car approximately once or twice per week, and that although her house is two-story, she only lives on the lower level. (T. 45). Plaintiff stated that on a typical day, she would "putter" around the house, sit and "flick through the [television] channels," pick up a few pieces of paper, but that she could not do anything for any length of time. (T. 46). She stated that she would "constantly sit and move, . . . like a nomad . . . type of thing." (*Id.*) She did not do any housework or gardening, but she could put dishes in the dishwasher and do the laundry "if the kids take it downstairs." (T. 46-47). Her husband shopped for food[5] and did all the cooking. (T. 47). Plaintiff could take care of her own personal needs, but had no hobbies, did not visit friends or relatives, did not read books, and although she

---

[4] Continuous Positive Airway Pressure ("CPAP") is a treatment that uses mild air pressure to keep the airways open. https://www.nhlbi.nih.gov/health/health-topics/topics/cpap. This treatment, which involves using a CPAP apparatus, is typically used by those who have breathing problems, including sleep apnea. *Id.*

[5] Plaintiff's husband worked in a grocery store, so he brought home whatever they needed. (T. 47).

could use the computer, she "lost interest in doing all that." (T. 47-48).

Plaintiff testified that she did not read and she did not listen to music. (T. 48). When asked what she did all day, she stated that she just sat and thought about things, and that her "mind wander[ed]." (T. 48). She testified that she slept about three or four hours per night and tried not to nap during the day. (T. 49-50). Plaintiff testified that the only medication that gave her side effects was the Topamax,[6] and that medicine made her "feel weird." (T. 50). Plaintiff also stated that, since 2008, she experienced numbness in her hands and cramping in her fingers. (*Id.*) She stated that the numbness went from her fingers up to her elbow, and that she dropped things "daily." (T. 50, 51). She testified that sometimes, she thinks she has a piece of paper in her hand, but when she looks down, "it won't be there." (T. 50).

Plaintiff also testified that she forgets things, and her concentration is affected so that her "mind will veer off to other things." (T. 51). Plaintiff claims that therapy made her arthritis worse, and that in 2008 when she was injured, she was told to lift only ten pounds. (T. 52). She stated that she tried not to lift at all because the next day, she is "useless." (*Id.*) Plaintiff testified that if she sits longer than fifteen or twenty minutes, her back starts to spasm, and that she would need a break for fifteen minutes. (T. 53). She stated that she could only stand for a couple of minutes, and then her feet would go numb. (T. 53). Plaintiff claimed that the numbness happened "all the time." (*Id.*) Plaintiff stated that she was told that the numbness was due to her fibromyalgia. (T. 54). She stated that she was trying to walk a block, but that she really did not like to leave

---

[6] Topamax is an anti-seizure medication, which is also used to treat migraine headaches. https://www.psycom.net/depression.central.topiramate.html. Topamax is sometimes used to treat mood disorders and PTSD, but these are not standard uses for this drug. *Id.* Plaintiff testified that Topamax was the new medication that she was prescribed for her pain, depression, and anxiety. (T. 41).

the house because her anxiety "gets really bad," and that she avoids large groups of people as much as possible. (*Id.*)

The ALJ called VE Connie Standhardt to testify at the hearing. (T. 55-63). VE Standhardt reviewed the vocational evidence and "heard most of the testimony." (T. 56). The plaintiff previously worked as the manager of a retail store, but could not perform her prior work due to her impairments. (T. 57-58). The ALJ proposed several hypothetical questions, each basing plaintiff's RFC on the ability to perform sedentary work, with additional limitations. (T. 57-63). Each hypothetical added new limitations. (T. 57-63). Based upon the hypothetical questions, the VE determined that there were three jobs that plaintiff could perform – an order clerk, a charge account clerk, a lens-block gauger, and a surveillance system monitor. (T. 58, 59). Later, the VE added the job of final assembler. (T. 61). Ultimately, when the ALJ added manipulative limitations or "off-task" behavior to the hypothetical question, the VE testified that there were no jobs that plaintiff could perform. (T. 61-62).

The ALJ's decision and defendant's brief provide a detailed statement of the medical and other evidence of record. (T. 19-27 & Def.'s Br. at 2-7). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

After finding that plaintiff had not engaged in substantial gainful activity since November 3, 2012, at step one of the disability analysis, the ALJ found that plaintiff had the following severe impairments at step two – fibromyalgia, obesity, degenerative disc disease, major depressive disorder, adjustment disorder with anxiety and pain disorder. (T. 19-21). At step three, the ALJ found that the severity of plaintiff's

7

impairments did not rise to the level of a listed impairment either alone, or in combination. (T. 21-22). In making this determination, the ALJ considered Listing 1.04 (Disorders of the Spine) and Listing 14.09 (Inflammatory Arthritis). (T. 21-22). With respect to her mental impairments, the ALJ considered Listing 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders) (T. 22-23).

At step four, the ALJ found that plaintiff had the RFC to perform sedentary work, except that she was limited to occasionally pushing and pulling with the upper extremities; occasionally climbing ramps or stairs, balancing, stooping, and crouching. She could never climb ladders, ropes, or scaffolds; could never kneel or crouch;[7] could occasionally reach overhead bilaterally; could frequently handle, finger, and feel bilaterally; should avoid concentrated exposure to cold, heat, wetness, and humidity; must avoid all exposure to vibration, unprotected heights and hazardous machinery; and was limited to performing simple, routine tasks. (T. 23-26).

Based on the additional limitations to sedentary work in the above RFC, the ALJ relied upon VE Connie Standhardt's opinion in finding that plaintiff could still perform four jobs which exist in the national economy.[8] (T. 27). Therefore, the ALJ found that plaintiff was not disabled from November 3, 2012 until July 7, 2014, the date of his decision.

## V. ISSUES IN CONTENTION

Plaintiff raises the following argument:

---

[7] The court notes that although this sentence states that plaintiff could never crouch, the ALJ also stated that the plaintiff could "occasionally crouch." (T. 23). The hypothetical question to the VE included "occasional crouching," but never kneeling or crawling. (T. 57). The RFC in the ALJ's decision is likely a typographical error. Any such error is harmless. There is no discussion of crouching in the VE's discussion of available jobs.

[8] The ALJ did not include the final assembler job in his decision. (T. 27).

1. The ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Br. at 3-6). (Dkt. No. 16).

Defendant argues that the ALJ's determination is supported by substantial evidence, and the complaint should be dismissed.[9] (Dkt. No. 15). For the following reasons, this court agrees with defendant and will order dismissal of the complaint.

## VI. RFC EVALUATION/CREDIBILITY

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make

---

[9] As stated above, the defendant was ordered to file a brief first, and thus, did not have the benefit of the plaintiff's argument. Thus, defendant's brief argues generally that the ALJ's decision is supported by substantial evidence.

9

conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's

symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

**B. Application**

Plaintiff's only argument in this case is the ALJ did not properly account for plaintiff's moderate limitation in her ability to deal with stress.[10] Plaintiff recognizes that a "moderate" limitation does not preclude the ability to work, but argues that "it certainly supports some limitations."[11] (Pl.'s Br. at 5). Plaintiff argues that there was no reference to such a limitation in any of the hypothetical questions that he asked the VE, and therefore, the VE's conclusion that plaintiff could perform other work was not

---

[10] Plaintiff does not challenge the physical findings made by the ALJ.

[11] The Second Circuit has held that "moderate limitations in work related functioning does not significantly limit, and thus, prevent, a plaintiff from performing unskilled work." *Race v. Comm'r of Soc. Sec.*, No. 1:14-CV-1357, 2016 WL 3511779, at *5 (N.D.N.Y. May 24, 2016) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

supported by substantial evidence.[12] Plaintiff notes that the ALJ gave "significant" weight to the consultative psychological report, written by Dr. Brett T. Hartman, Psy. D., who found that plaintiff was able to follow and understand simple directions, was able to perform simple tasks, had a fair ability to learn new tasks and a fair ability to make appropriate decisions. (T. 454-55). Dr. Hartman also found that plaintiff had "mild" difficulty maintaining attention and concentration, maintaining a regular schedule, performing complex tasks independently, and relating adequately with others. (T. 455). Finally, Dr. Hartman found that plaintiff had "a moderate difficulty dealing appropriately with the normal stressors of life." (T. 455).

Plaintiff argues that if Dr. Hartman's report is given "significant" weight, then the ALJ should have incorporated plaintiff's "moderate" difficulty dealing with stress into the RFC, by including the limitation of "low stress work." (Pl.'s Br. at 4). Plaintiff argues that the failure to do so was error. (*Id.*) Plaintiff also cites various parts of the record, indicating that she suffered from anxiety, took Xanax for her anxiety, had a GAF[13] score of 51-60, indicating "moderate symptoms," and had "moderate difficulties

---

[12] Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-277.

[13] The Global Assessment of Functioning ("GAF") is a 100 point scale. A score of 41-50 indicates "serious symptoms," 51-60 indicates "moderate symptoms," and 61-70 indicates "some mild symptoms." AMERICAN PSYCHIATRIC ASSN., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th Ed. Text Revision 2000) ("DSM-IV-TR"). However, the court must also note that the use of GAF scores is no longer favored, and this instrumentality has been eliminated from the current Diagnostic and Statistical Manual. *See Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 536

in social functioning." (*Id.* at 4-5).

First, it is the province of the ALJ to accept parts of a doctor's opinion and reject others as long as the ALJ's conclusions are supported by substantial evidence in the record. *Matta v. Astrue*, 508 F. App'x 53, 56-57 (2d Cir. 2013) (although the ALJ's conclusion may not perfectly correspond with any of the medical source opinions cited in the decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole); *Veino v. Barnhart*, 312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of treating physician's report). Thus, the fact that the ALJ may not have accepted every part of Dr. Hartman's report is not error as long as the ALJ's determination is supported by substantial evidence.

In addition, while plaintiff makes a variety of references to parts of the record that refer to plaintiff having stress and "moderate symptoms," (Pl.'s Br. at 4-5), this is not inconsistent with the ALJ's finding that two of plaintiff's severe impairments were depressive disorder and anxiety. (T. 19). The ALJ did not question the diagnosis. He rejected the *extent* of plaintiff's symptoms, including her ability to cope with stress. The ALJ is not required to reconcile every shred of evidence in making his determination. *See Miles v. Harris*, 645 F.2d at 124.

While the ALJ did not specifically include plaintiff's ability to deal with stress in his RFC, he accounted for plaintiff's claimed stress in the portion of his decision dealing with credibility. (T. 24-25). The ALJ stated that he gave "thoughtful

---

(S.D.N.Y. 2015) (noting that use of GAF has been eliminated, but given that the GAF scale was in use at the time that plaintiff was assessed, there was no error in the ALJ's reliance on the scores).

13

consideration to the claimants allegations of disabling symptomatology," including her claims of constant pain, her anxiety and depression, her difficulty interacting with people, her stress when "going out," and her stated "terrible stress during the hearing." (T. 24). The ALJ found that plaintiff's allegations, which included reference to extreme stress, had "little substantive support." (T. 25).

In making this determination regarding her mental symptoms, the ALJ cited plaintiff's claim that she had few interactions, while she reported to treating sources that she had a good relationship with family members. (T. 25) (*See* T. 511). The ALJ also cited Dr. Hartman's finding that plaintiff had no more than mild difficulty relating to others. The ALJ also cited notes, written by treating sources at Pinnacle Behavioral Health, indicating that plaintiff's mood was "stable" and affect "congruent." (T. 25). The ALJ noted that Dr. Hartman observed only mild deficits in attention and concentration, notwithstanding plaintiff's allegation that she has trouble concentrating and no longer enjoys reading. (T. 25). In addition, Dr. Hartman's final conclusion regarding stress appears to be based primarily on plaintiff's statements and not on any objective testing. The ALJ may provide less weight to a doctor's opinion when it is based largely on the subjective statements of a plaintiff who the ALJ properly determined to be less than fully credible. *Roma v. Astrue*, 468 F. App'x 16, 19 (2d Cir. 2012).

The ALJ found, based on the record, that plaintiff's claims of disabling symptomatology, including stress, were "not entirely credible." (T. 25). On June 28, 2013, in her "Review of Symptoms," plaintiff's treating primary care physician, Dr. Samantha Ludwig wrote: "Psych: depression and anxiety - seeing Deb Sweeney. **Pt.**

14

**trying to become fully disabled.**" (T. 526) (emphasis added). Plaintiff's own treating physician questioned her credibility regarding her mental status.

Social Security Ruling ("SSR") 85-15 discusses the effect of various non-exertional impairments, including stress and mental illness on the ability to work. SSR 85-15, 1985 WL 56857 (1985). SSR 85-15 states that the basic mental demands of competitive work include the ability on a sustained basis, to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *Id.* at *4. Plaintiff is not significantly limited in any of these "basic mental demands."

Although SSR 85-15 states that is applicable to the evaluation of only non-exertional impairments, there is a clear discussion in the Ruling of the effect of stress. Stress at the workplace is discussed in terms of the ability to get to work on time and regularly, being supervised, and remaining at work for a full day. *Id.* at *6. Plaintiff is not significantly limited in the ability to carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance and be punctual. (T. 454-55). Based on the ALJ's credibility finding, together with Dr. Hartman's report, indicating that plaintiff is not significantly limited in the basic mental demands of work; her treating counselor's notes; and Dr. Ludwig's statement about plaintiff's credibility, this court finds that the ALJ's failure to include a limitation to "low stress work" in the RFC is not error. In the alternative, even if the court were to consider this an error, any such error is harmless because the ALJ specifically considered plaintiff's allegations of stress in the ALJ's credibility determination, finding that her claims of extreme stress and other symptoms were not "entirely

credible." Finally, the limitations that the ALJ included in the RFC[14] were sufficient to incorporate any issues with stress that plaintiff experiences.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and the complaint is **DISMISSED IN ITS ENTIRETY**, and it is

**ORDERED**, that the Clerk enter judgment for defendant.

Dated: November 18, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[14] As stated above, the ALJ limited plaintiff to "simple, routine tasks." (T. 23).